## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal File No. 19-CR-185 (SRN/KMM)** |
| Plaintiff, | |
| v. | **ORDER** |
| **Ronald Jermaine Jackson (01),** | |
| Defendant. | |

Amber Brennan, Justin Wesley, and Nathan Nelson, United States Attorney's Office, 300 South Fourth Street, Ste. 600, Minneapolis, MN 55415, for the Government

Ronald Jermaine Jackson, Sherburne County Jail, 13880 Business Center Dr. NW, Elk River, MN 55330, Pro Se Defendant

Lauren Campoli, 900 IDS Center, 80 S. 8th St., Minneapolis, MN 55402, Standby Counsel for Defendant Jackson

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objection [Doc. No. 202] filed by Pro Se Defendant Ronald Jermaine Jackson to Magistrate Judge Kate Menendez's April 30, 2020 Report and Recommendation ("R&R") [Doc. No. 198]. In the R&R, Magistrate Judge Menendez denied Jackson's Pro Se Motion to Dismiss the Indictment [Doc. No. 169]. Also before the Court is Jackson's Pro Se Motion to Quash the Indictment [Doc. No. 208]. For the reasons set forth below, Jackson's Objection is overruled, the Court adopts the R&R, denies Jackson's Motion to Dismiss the Indictment, and denies his Motion to Quash the Indictment.

I.   **BACKGROUND**

On July 16, 2019, the Government charged Jackson and co-defendant William Charles Graham with interference with commerce by robbery in violation of 18 U.S.C. § 1951(b)(1), (Indictment [Doc. No. 1]), Count 1), and using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (*Id.*, Count 2.) The Government alleges that in April 2019, Jackson and Graham robbed a T-Mobile store in Brooklyn Park, Minnesota, using a firearm in the course of the robbery. (*Id.*, Counts 1 & 2.)

On March 24, 2020, Jackson moved to dismiss the Indictment, raising several procedural arguments in support of his position that the Indictment was unlawful, and that he was unlawfully detained. (*See* Def.'s Mot. to Dismiss at 1–4.) Responding to those arguments in the R&R, Magistrate Judge Menendez noted that an unsigned copy of the Indictment is publicly available, and that she had reviewed the sealed, signed Indictment, and verified that it was signed by the grand jury foreperson and an attorney for the Government. (R&R at 1–3.) A copy of the Indictment was also provided to Jackson, in which the grand jury foreperson's signature was redacted. (*See id.* at 3.) The magistrate judge further verified that the redacted copy matched the original in all respects, except for the redacted signature. (*Id.*) She found that the redaction did not render the Indictment "fraudulent." (*Id.*) In addition, she found that Jackson had failed to demonstrate any particularized need for the disclosure of the identity of the grand jury foreperson. (*Id.* at 4.)

Also in the R&R, Magistrate Judge Menendez rejected Jackson's argument that it was necessary for Erica H. MacDonald, U.S. Attorney for the District of Minnesota, to sign the Indictment, finding instead that the signature of Assistant United States Attorney ("AUSA") Charles Kovats was sufficient. (*Id.*)

Finally, Magistrate Judge Menendez rejected Jackson's argument that without the signature of a judge on the Indictment, there was no probable cause to charge him. (*Id.* at 5.)

In his Objection, Jackson argues that he has a right to "see the full Indictment," the Indictment was "unlawfully" signed by AUSA Kovats, and not U.S. Attorney MacDonald herself, the signature page is fraudulent because there is no docket number attached to it, it is invalid because it was not signed by a judge and lacks an oath, and he was unlawfully transferred from state court to federal court. (Obj. at 1–2.)

Related to his objection about unlawful transfer, in Jackson's Motion to Quash the Indictment, he argues that this Court lacks jurisdiction over him, and/or has transferred him in violation of his due process rights, because he was transferred from state court to federal court without a writ of habeas corpus. (Mot. to Quash at 1.)

## II.  DISCUSSION

The district court must undertake an independent, de novo review of those portions of the R&R to which a party objects and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### A. Copy of Indictment with Grand Jury Foreperson's Signature

The Federal Rules of Criminal Procedure provide that an indictment is to be signed by the grand jury foreperson and an attorney for the government.  Fed. R. Crim. P. 6(c); 7(c)(1).  As the magistrate judge correctly observed, the established practice in this District is to file an unsigned copy of the indictment on the public docket to protect the secrecy of grand jury proceedings.  *See, e.g., United States v. Spencer*, No. 14-cr-322 (SRN/TNL), 2015 WL 5008968, at *8 (D. Minn. Aug. 18, 2015); *United States v. Riley*, Case No. 09-cr-98 (PJS/RLE), 2009 WL 1954633, at *6 (D. Minn. July 6, 2009); *see also United States v. Mariner*, 2012 WL 6082720, at *7 (D.N.D. Dec. 4, 2012).  Many important policy reasons support grand jury secrecy, including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*In re Grand Jury Subpoena Duces Tecum*, 797 F.2d 676, 679 (8th Cir. 1996) (quoting *United States. v. Procter & Gamble Co.*, 356 U.S. 677, 682 n.6  (1958) (internal citation omitted)).

While Jackson claims that he has a "right" to see the Indictment, that right does not extend to the disclosure of the identity of the grand jury foreperson who signed the Indictment.  The Eighth Circuit has recognized the longstanding precept that "'the proper functioning of

our grand jury system depends upon the secrecy of grand jury proceedings.'" *United States v. McDougal*, 559 U.S. 837, 840 (8th Cir. 2009) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)). There is no common law right of access to grand jury materials, and courts will not order disclosure absent a recognized exception set forth in Fed. R. Crim. P. 6(e)(3), or a valid challenge to the sealing order. *Id.* (citations omitted). No such exception or proper challenge exists here. Magistrate Judge Menendez personally reviewed a sealed copy of the Indictment's signature page [Doc. No. 2-1] to verify that it was indeed signed by the grand jury foreperson and an attorney for the Government. (R&R at 2.)

The Court further agrees with the magistrate judge that the Indictment in this case complies with Fed. R. Crim. P. 6(c) and 7(c)(1). Moreover, as Magistrate Judge Menendez notes in the R&R, because signatures are a formality, even if the Indictment lacked signatures, it would not be rendered invalid.[1] *United States v. Morse*, 613 F.3d 787, 793 (8th Cir. 2010) ("The signatures on the indictment, however, are a formality, and even the lack of signatures would not render an indictment invalid."); *Hobby v. United States*, 468 U.S. 339, 345 (1984) ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.").

---

[1] The Court likewise rejects Jackson's argument that the Government "confirm[ed] the invalidity of the Indictment," when it posited that even if the signatures were absent, it would not be fatal to the Indictment. (Obj. at 2.) The Government presented a correct statement of the law, and assumed, for the sake of argument, that if the signatures were absent—which they are not—the Indictment would nevertheless still be valid. *United States v. Morse*, 613 F.3d 787, 793 (8th Cir. 2010); *Hobby v. United States*, 468 U.S. 339, 345 (1984). This is an entirely proper argument in the alternative and is not, by any stretch, a confirmation that the Indictment is invalid.

The Court further agrees with Magistrate Judge Menendez that simply because Jackson has not seen the grand jury foreperson's signature does not mean that grand jury proceedings never occurred. (R&R at 3.) Accordingly, Jackson's objections that he has a "right" to see the signed copy of the Indictment, and the Indictment is somehow invalid based on the non-disclosure of the foreperson's identity, are overruled.

**B. Signature of Attorney for the Government**

Contrary to Jackson's argument, it is not necessary for U.S. Attorney MacDonald to sign the Indictment herself. The federal rules call for the signing of indictments by "an attorney for the government." Fed. R. Crim. P. 7(c). As Jackson acknowledges, AUSA Kovats signed the Indictment. Although Jackson does not appear to contest the fact that Mr. Kovats is an attorney for the Government, he argues that his signature is somehow "unlawful" because AUSA Kovats signed it in "his personal capacity rather than his official capacity." (Obj. at 1) ("Mr. Kovats may very well have the authority to sign Indictments but he is not authorized to sign his own name especially not in his personal capacity."). This ground of objection is utterly devoid of any legal or factual support, and the Court overrules it. The Indictment was properly signed by "an attorney for the government," as contemplated by the federal rules. *See* Fed. R. Crim. P. 7(c).

**C. Lack of Docket Number on Signature Page of Indictment**

Jackson further objects to the magistrate judge's recommendation, arguing that the signature page of the Indictment is "fraudulent" because it "does not have any document number attached to it and anything not docketed on the docket sheet did not occur." (Obj. at

2.) He appears to argue that when he received a copy of the redacted signature page, the transmitted document should have been separately docketed. (*Id.*)

This ground of objection lacks any factual or legal support and is overruled. On January 29, 2020, the magistrate judge directed the Government to provide defense counsel a copy of the signed indictment that showed the prosecutor's signature and redacted the grand jury foreperson's signature. (Jan. 29, 2020 Order [Doc. No. 121] at 3.) The Court did not require the transmittal of the document to be docketed, nor was it required by any other rule. Jackson does not contend that he failed to receive the document, and a lack of a docket entry certainly does not mean that the Indictment was not signed. This ground of objection is overruled.

### D. Signature of Judge and Oath

As noted, Jackson argues that the Indictment is invalid or fraudulent because "there must be a visible signature from a judge under oath or affirmation stating[,] 'Probable Cause' exist[s]," and "that the information is truth, whole truth, and not misleading." (Obj. at 2.)

As Magistrate Judge Menendez correctly observed, "The grand jury holds the 'singular role in finding the probable cause necessary to initiate a prosecution for a serious crime.'" (R&R at 4) (citing *Kaley v. United States*, 571 U.S. 320, 328 (2014)). There is no requirement that a judge sign a grand jury indictment. It need only be signed by the grand jury foreperson and an attorney for the government, as it was here. Nor is there any requirement that an oath be stated on an indictment. A proper indictment "conclusively determines the existence of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975). For all of the foregoing reasons, the Court overrules Jackson's objection that the

Indictment is invalid, fraudulent, or not supported by probable cause because it lacks a judge's signature or oath.

To summarize, all of Jackson's arguments with respect to the alleged invalidity or infirmity of the Indictment are without merit. The Court will not entertain any of these arguments again. To the extent that Jackson seeks to reassert them, he may raise them on appeal after this case has concluded.

### E.  Transfer to Federal Jurisdiction and Custody

In both his Objection and his Motion to Quash, Jackson argues that his due process rights have been deprived because there was no writ of habeas corpus attached to this federal proceeding. (Obj. at 2; Mot. to Quash at 1.) He contends that because he was transferred without such a writ, his transfer from one jurisdiction to another was therefore "unlawful." (Obj. at 2; Mot. to Quash at 1.) The Government asserts that this argument is without merit, and, in fact, Jackson may benefit from the lack of a writ of habeas corpus ad prosequendum in this case. (Gov't's Opp'n to Mot. to Quash [Doc. No. 210] at 2 n.1.)

A writ of habeas corpus is unnecessary here. Under our dual-sovereignty system, certain conduct may subject a person to criminal liability under both state and federal law. Also, two different sovereigns may exercise jurisdiction over the same person, during the same time period. *See United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). In fact, "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute" and vice-versa. *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019).

Although the state had first arrested Jackson and filed criminal charges against him, it released him to federal custody based on the federal Indictment and accompanying arrest warrant. (*See* Gov't's Opp'n to Mot. to Quash at 2.) Since that time, the state has dismissed its charges against Jackson. (*Id.*) Although Jackson could have been placed "on loan" to the United States under a writ of habeas corpus ad prosequendum, instead, the state surrendered him to federal authorities, and relinquished jurisdiction by dismissing the state charges against Jackson. *See Cole*, 416 F.3d at 896–97 (observing that primary jurisdiction of the sovereign that first obtained custody of a defendant may be relinquished in four ways, including by the dismissal of charges). In short, Jackson was not unlawfully transferred from one jurisdiction to another, and there has been no violation of his Constitutional rights as a result of that transfer.[2] His objection on this basis is overruled and his Motion to Quash is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Pro Se Objection [Doc. No. 202] is **OVERRULED**;

2. The April 30, 2020 R&R [Doc. No. 198] is **ADOPTED**;

3. Defendant's Pro Se Motion to Dismiss the Indictment [Doc. No. 169] is **DENIED**; and

4. Defendant's Pro Se Motion to Quash the Indictment [Doc. No. 208] is **DENIED**.

---

[2]   Moreover, the lack of a writ of habeas corpus ad prosequendum may ultimately benefit Jackson. As the Government observes, had such a writ been issued, and the state maintained primary jurisdiction over Jackson, he would have been considered "on loan" to the federal government, and the Bureau of Prisons may not have credited his time spent in federal custody while his state charges were still pending. (*See* Gov't's Opp'n to Mot to Quash at 2 n.2.)

Dated: June 12, 2020                                s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge